IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TORIO HOLMES and BRIAN BROWN, | Case No. 3:23-cv-00329-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| GREENBRIER COMPANIES, c/o Greenbrier Gunderson Marine LLC, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Self-represented plaintiffs Torio Holmes ("Holmes") and Brian Brown ("Brown") (together, "Plaintiffs") allege violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Occupational Safety and Health Act of 1970 ("OSHA") in addition to claims of defamation and negligence against defendant Greenbrier Companies ("Greenbrier").

Before the Court are Greenbrier's motion for summary judgment (ECF No. 52), Plaintiffs' motion for summary judgment (ECF No. 62), and Plaintiffs' motions to object to one of Greenbrier's declarations (ECF Nos. 61, 65). The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. For the reasons that follow, the Court grants

PAGE 1 – OPINION AND ORDER

Greenbrier's motion for summary judgment, denies Plaintiffs' motion for summary judgment, and denies Plaintiffs' motions to object to one of Greenbrier's declarations.

## BACKGROUND

Plaintiffs allege claims of discrimination, retaliation, defamation, negligence, and violations of OSHA against their former place of employment, where they worked through a temporary staffing agency. (*See* Fourth Am. Compl. ("FAC") at 3-4, ECF No. 45.)

At all relevant times, Greenbrier owned Gunderson Marine ("Gunderson"), a marine barge manufacturer. (*See* Decl. Matt Svaglic ("Svaglic Decl.") ¶ 3, ECF No. 55.)[1] In early 2022, Gunderson contracted with Fugue Lauman ("Fugue")—a temporary staffing company based in the southern United States—to hire temporary workers. (*Id.* ¶ 5; Svaglic Decl. Ex. 1, ECF No. 55, attaching the contract.)

In February 2022, Plaintiffs applied for and accepted employment through Fugue at Gunderson's facility in Portland. (Decl. Paul Buchanan Supp. Def.'s Mot. Summ. J. ("Buchanan

---

[1] Plaintiffs object to Svaglic's declaration "on the grounds of perjury[.]" (*See* Pls.' Corrected Mot. for Leave at 1, ECF No. 65; *see also* Pls.' Mot. for Leave, ECF No. 61.) The Court construes Plaintiffs' objection as a motion to strike the declaration. Svaglic works in health and safety for Gunderson and swore under the penalty of perjury that the statements in his declaration were true and correct, in conformance with 28 U.S.C. § 1746. (*See* Svaglic Decl. at 8.) Further, the declaration includes testimony based on Svaglic's personal observations and experiences. (*See generally id.*) There is no evidence that Greenbrier submitted the declaration in bad faith or solely for the purpose of delay. *See* FED. R. CIV. P. 56(h) (outlining potential sanctions for declarations submitted in bad faith). Plaintiffs may dispute the truth of the statements by submitting their own evidence and attempting to demonstrate a genuine issue of material fact for a jury to consider. Accordingly, the Court denies Plaintiffs' motions (ECF Nos. 61 and 65) and does not strike the declaration. *See Rexroat v. Ariz. Dep't of Educ.*, No. 11-cv-1028-PHX-PGR, 2012 WL 5936672, at *3 (D. Ariz. Nov. 26, 2012) (denying the plaintiff's motion to strike and explaining that "[t]he fact that Plaintiff disagrees [with statements in the declaration] does not make [the declarant]'s declaration materially false"); *Jilka v. DriveTime Auto. Grp.*, No. 03-cv-1369-PHX-MHM, 2006 WL 8440448, at *2 (D. Ariz. Mar. 31, 2006) ("Plaintiff's motions to strike these affidavits and for charges of perjury . . . are denied."), *aff'd sub nom.*, 234 F. App'x 524 (9th Cir. 2007).

Decl.") Ex. 5,[2] Depo. Torio Holmes ("First Holmes Depo.") 25:20-22, Oct. 27, 2023;[3] Svaglic Decl. ¶ 8.) At that time, Plaintiffs lived in Mississippi. (*See* First Holmes Depo. 119:16-21; Buchanan Decl. Ex. 7, Depo. Brian Brown ("Brown Depo.") 8:20-9:2.) Fugue employed Plaintiffs as carpenters to erect and take down scaffolding so that other trade workers, such as painters and welders, could access and work on various parts of the vessels. (First Holmes Depo. 68:7-11, 77:9-15; Brown Depo. 35:4-8; Svaglic Decl. ¶ 8.) Pursuant to Fugue's contract with Gunderson, Fugue was required to provide workers' compensation insurance for Plaintiffs. (Svaglic Decl. Ex. 1 at 2.)

Plaintiffs flew to Portland and, on February 28, 2022, began working at Gunderson. (First Holmes Depo. 29:25-30:3; Brown Depo. 40:18-22.) Plaintiffs received training and orientation, including on topics of safety. (First Holmes Depo. 37:5-11, 38:23-25, 47:17-20; Brown Depo. 41:5-42:2; Svaglic Decl. ¶ 9.) The next day, Plaintiffs began performing work on the outside of the vessels. (First Holmes Depo. 37:25-38:4, 68:2-6, 69:7-13; Brown Depo 41:16-23, 54:11-14.) Around March 3, 2022, Plaintiffs' work moved to inside the vessels. (First Holmes Depo. 70:7-10.) Plaintiffs sometimes worked in confined areas where welders and painters were also

---

[2] Exhibits to Buchanan's declaration are available at ECF No. 54.

[3] Plaintiffs allege that defense counsel created "false evidence," edited deposition transcripts, and committed perjury during a deposition. (*See* Pls.' Resp. Def.'s Mot. Summ. J. ("Pls.' Resp.") at 3, ECF No. 66.) Plaintiffs have not explained what parts of the deposition transcripts they believe were edited, have failed to present any evidence of their accusations, and have not properly moved for discovery sanctions. *See* FED. R. CIV. P. 37. Separately, Plaintiffs appear to raise an evidentiary objection to the Court's consideration of Holmes' deposition transcript, asserting that Greenbrier exceeded the time limit for Holmes' deposition. (Pls.' Mot. Summ. J. ("Pls.' Mot.") at 3, ECF No. 62; Pls.' Resp. at 3.) Again, Plaintiffs have not presented any evidence of this allegation and have not properly moved for discovery sanctions. *See* FED. R. CIV. P. 37. Accordingly, the Court considers the deposition transcripts as excerpted by Greenbrier.

PAGE 3 – OPINION AND ORDER

working or had finished working immediately before them. (*Id.* at 84:21-25, 86:10-13, 186:12-16; Brown Depo. 61:18-21, 63:21-64:4.)

On March 3, 2022, Holmes began feeling dizzy and suffered a headache that he believed resulted from the industrial chemicals and fumes at the jobsite. (First Holmes Depo. at 85:1-86:6.) He fell down as a result. (*Id.*) Brown began taking the over-the-counter medication Excedrin for a headache every other day. (Brown Depo. 62:12-15.) During his first week of work, Brown reported to his Fugue supervisor, Joe Milne ("Milne"), that the fumes were giving him headaches and that he wanted to use a respirator. (First Holmes Depo. 34:25-35:4, Brown Depo. 62:3-20, 64:14-66:21.) Holmes also "told [Milne] several times that . . . I was getting dizzy and . . . I was getting headaches . . . with smelling those fumes." (First Holmes Depo. 86:20-87:2.) Sometime between March 10 to 12, 2022, Holmes also asked to use a respirator at work. (*Id.* at 45:2-3, 116:14-117:3.) Around March 12 to 14, 2022, Holmes asked to be laid off because he was becoming ill from the fumes, and Brown put in his two weeks' notice. (*Id.* at 87:7-88:25, 114:7-11, 116:2-9; Brown Depo. 54:21-55:22, 89:3-11.)

By March 16, 2022, Gunderson had begun the process of approving Plaintiffs for use of respirators. (*See* Svaglic Decl. ¶¶ 21-22.) The process required medical clearance and a test to ensure that the respirator fits correctly and seals against the employee's face. (*Id.* ¶ 23.) On March 17, 2022, Plaintiffs provided Gunderson with the necessary medical information for clearance, although Holmes' testimony suggests that Milne unilaterally filled out some of the health information without consulting him. (*See* First Holmes Depo. 101:9-103:17, 108:1-5; Brown Depo. 71:19-24, 81:16-82:1; *see also* Svaglic Decl. Ex. 2 at 1, ECF No. 55.) Further, no one informed Holmes why the medical information was required or that Gunderson had begun the process of approving use of a respirator. (First Holmes Depo. 101:9-103:17, 105:3-106:7,

PAGE 4 – OPINION AND ORDER

108:10-13.) The same day or the following day, Plaintiffs were medically cleared for a respirator. (*See* Svaglic Decl. Ex. 2 at 1, 3-4.)

Soon thereafter, Holmes was informed that he needed to shave his facial hair before the respirator fit test and that his supervisor would need to sign for the respirator. (First Holmes Depo. 103:21-23; 109:14-110:18, 117:11-118:12, 121:23-122:6; 132:23-25.) The day after Holmes told his supervisor that he needed supervisory permission to get a fit test and receive a respirator, his supervisor told all carpenters that they "had to go in the ship or go home." (*Id.* at 118:11-21; *see also* Brown Depo. 108:13-15.) One employee chose to leave. (First Holmes Depo. 118:22-25.) Although Holmes states that he shaved, he never received a fit test. (*Id.* at 110:6-22; *cf.* Buchanan Decl. Ex. 6, Depo. Torio Holmes ("Second Holmes Depo.") 54:22-55:11, Nov. 17, 2023, indicating that Holmes did not shave because Gunderson never scheduled a fit test, but that razors were available to shave if Gunderson offered a test; Svaglic Decl. ¶ 23, testifying that Holmes never shaved before the end of his employment.) Plaintiffs never received respirators during their employment. (*See* Brown Depo. 84:2-5.)

On March 18, 2022, Plaintiffs purchased plane tickets for March 26, 2022, to return home to Mississippi. (Second Holmes Depo. 69:13-70:7; Brown Depo. 90:25-91:4.)

On March 23, 2022, Gunderson's foreperson, Marshall Young ("Young"), directed Plaintiffs and another Fugue carpenter, all of whom are Black, to work in an enclosed area of the vessel. (First Holmes Depo. 122:7-123:3, 124:15-125:8, 137:11-16; Brown Depo. 60:19-61:4, 75:10-21.) Gunderson's carpenters, who were white and appeared to be older in age, remained working outside the vessel. (First Holmes Depo. 80:9-20; Second Holmes Depo. 11:7-15:5; Brown Depo. 74:4-75:11.) The area was taped off with red tape, and Holmes was concerned

PAGE 5 – OPINION AND ORDER

about the strong fumes. (First Holmes Depo. 123:9-13; *cf.* ECF No. 74.)[4] At Holmes' request, Gunderson sent a safety person into the vessel, who "said she was going to do a sniff test," and she announced that the vessel was safe to enter. (First Holmes Depo. 123:11-16.) Holmes requested to work on the outside of the vessel, but a Gunderson carpenter, Brad Olson ("Olson"), denied his request. (*Id.* at 124:10-14.) Olson told Plaintiffs that "the younger guys" must work in the vessel. (*Id.* at 124:19-22; *see also* Brown Depo. 74:4-15.) After approximately thirty minutes, Holmes reported that he began to feel sick, dizzy, like he could not breathe, and like he was about to pass out. (First Holmes Depo. 127:10-18.) Brown also got a headache and felt "[a] lot of nausea." (Brown Depo. 110:14-21.) Holmes asked a coworker to lower a ladder but was told to stay in the vessel until the break. (First Holmes Depo. 127:15-20; Brown Depo. 104:8-22, "[H]e didn't put the ladder down immediately.") Shortly thereafter and when told that it was "serious," the coworker lowered a ladder, and the carpenters exited the vessel. (*See* Brown Depo. 105:6-23; *see also* First Holmes Depo. 128:19-25, 131:12-23.) When they exited the vessel, Plaintiffs' Fugue supervisor, Milne, said, "let me get you approved for a fit test" for a respirator. (First Holmes Depo. 132:1-5.) Holmes declined at that moment because he was feeling sick and "could barely breathe." (*Id.* at 132:6-9.)

Following the thirty minutes working in the vessel, Brown began throwing up. (Brown Depo. 120:8-12.) Holmes went to the emergency room and received treatment for a headache

---

[4] Plaintiffs have filed various exhibits and have not attached them to a corresponding declaration or affidavit. "[U]nauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted). Defendants have not objected to the authenticity of any of the documents, and the Court assumes without deciding that Plaintiffs could authenticate the filed documents and considers them for the purposes of deciding the pending motions. *Cf. Rural Ariz. Maint. Specialists LLC v. Am. Bonanza Gold Corp.*, No. 13-cv-02355-PHX-GMS, 2015 WL 13567549, at *2-3 (D. Ariz. May 5, 2015) ("Fairness and judicial economy justify granting Plaintiff leave to authenticate its exhibits and thereby properly support its Motion for Summary Judgment.").

and nausea on March 24, 2022. (ECF No. 73 at 1-2.) Holmes' doctor told him not to go back in the ship, and he received a doctor's note that he sent to Milne. (First Holmes Depo. 134:12-135:13.) Holmes did not return to work after March 23, 2022. (*Id.* at 134:8-10.) Brown worked three more days, but never worked in the same area where Holmes got sick. (Brown Depo. 54:15-20, 108:17-109:14.) Plaintiffs flew home on March 27, 2022. (Second Holmes Depo. 72:11-18; Brown Depo. 91:11-14.)

Brown alleges that his experience working for Greenbrier exacerbated his preexisting condition of sarcoidosis (a lung condition). (*See* Brown Depo. 133:15-25; ECF No. 71 at 1; ECF No. 72 at 8, 33, 50, 60, 64.) The record suggests that doctors subsequently found inflammation and scarring on his lungs. (*See* Brown Depo. 154:2-10; ECF No. 72 at 50.) Holmes alleges that, as a result of his work for Greenbrier, he experienced chest pain, shortness of breath, heart failure, depression, anxiety, panic attacks, and sleep disruption. (*See* ECF No. 69-1; ECF No. 77 at 1-6; ECF No. 78 at 1-5; ECF No. 79.)

On March 8, 2022, during Plaintiffs' employment, the Occupational Safety and Health Administration conducted a surprise inspection at the Gunderson facility that lasted for several days. (*See* Pl.'s Mot. for Leave Ex. 63, ECF No. 61-1; Brown Depo. 94:1-12; Svaglic Decl. ¶ 16.) The inspection found that Gunderson did not provide a fit test to temporary employees before they could use a respirator, and Gunderson allowed the employees to "wear respirators with a condition that interfere[d] with the respirator seal." (Pl.'s Mot. for Leave Ex. 63.) During the inspection, the investigators did not observe employees working in confined spaces with toxic fumes, and the inspection did not find that any potentially hazardous substances exceeded any of the Occupational Safety and Health Administration's Personal Exposure Limits ("PEL"). (*See id.*; Svaglic Decl. ¶ 16.) Gunderson also measured air quality levels at the beginning of each

PAGE 7 – OPINION AND ORDER

shift in the vessel for the duration of Plaintiffs' employment. (Svaglic Decl. ¶ 17.) Gunderson applies a higher air quality standard than the PEL set by the Occupational Safety and Health Administration. (*Id.* at ¶ 4.) There is no evidence that, during Plaintiffs' employment, the air quality levels where the carpenters worked exceeded safety standards or required the use of a respirator by law. (*Id.* at ¶¶ 17-18.)

A few months later, Plaintiffs filed workers' compensation claims under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), the relevant act covering their claims. (*See* Buchanan Decl. Ex. 1 at 1-3; Buchanan Decl. Ex. 2 at 1; *see also* First Holmes Depo. 188:4-8; Second Holmes Depo. 92:3-7; Brown Depo. 119:6-120:21.) An administrative law judge held a hearing on Holmes' claim on September 20, 2023, and denied Holmes' claim on December 5, 2023. (Buchanan Decl. Ex. 3 at 1-2; *see also* ECF No. 76.) Holmes filed suit against the workers' compensation insurance underwriter in the U.S. District Court, Eastern District of Louisiana. *See* Compl., Holmes v. The American Equity Underwriters, Inc., No. 2:23-cv-03123-BWA-KWR (E.D. La. Aug. 14, 2023), ECF No. 4. That court dismissed Holmes' complaint. *See* Order, Holmes v. The American Equity Underwriters, Inc., No. 2:23-cv-03123-BWA-KWR (E.D. La. Nov. 13, 2023), ECF No. 18. Brown's workers' compensation claim is still pending. (*See* Buchanan Decl. ¶ 7, ECF No. 54; Brown Depo. 15:14-19.)

Separately, Plaintiffs filed the current suit, alleging discrimination, retaliation, defamation, negligence, and violations of OSHA against Greenbrier. (*See* FAC at 3-4.)

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d

PAGE 8 – OPINION AND ORDER

885, 891 (9th Cir. 2005). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

Greenbrier argues that Plaintiffs' claims arising out of their alleged work-related injuries are barred because the LHWCA provides the exclusive remedy, that Plaintiffs' Title VII claims and defamation claim fail on the merits, and that OSHA does not provide a private right of action.[5] (Def.'s Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mot.") at 20-31, ECF No. 53.)

///

///

///

---

[5] Plaintiffs argue in their motion for summary judgment that Greenbrier violated the Federal Employers' Liability Act ("FELA"). (*See* Pls.' Mot. at 4.) Plaintiffs have not pled a claim under that Act. (*See generally* FAC.) A plaintiff must "include the factual basis of its claims in its complaint" and may not "raise new claims in its motion for summary judgment." *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1072 (9th Cir. 2023). To the extent that Plaintiffs move to amend their complaint, the Court denies the request as futile because there is no evidence that FELA applies to Greenbrier. *See* 45 U.S.C. § 51 (outlining liability for railroad common carriers); *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) ("[W]hen Congress enacted FELA in 1908, its 'attention was focused primarily upon injuries and death resulting from accidents on interstate railroads.'" (quoting *Urie v. Thompson*, 337 U.S. 163, 174 (1949))).

PAGE 9 – OPINION AND ORDER

I.     **THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT**

Defendants argue that the LHWCA provides Plaintiffs' exclusive remedy for their alleged injuries from exposure to hazardous substances in the workplace. (*Id.* at 20.) The Court agrees.

"Enacted in 1927, the LHWCA establishes a mandatory framework for compensation of maritime employees injured on the navigable waters of the United States." *Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1267 (9th Cir. 2018). "When a covered employee is injured, the employer is liable regardless of fault." *Id.* (citing 33 U.S.C. § 904(b)). "An injured employee may file a claim for workers' compensation benefits with the Office of Workers' Compensation Programs, which has sole authority to investigate the claim and hold a hearing, and must either reject the claim or make an award." *Id.* (citing 33 U.S.C. § 919 and 20 C.F.R. § 1.2(e)).

"When the LHWCA applies, its remedy is 'exclusive and in place of all other liability of [the] employer to the employee.'"[6] *Cruz*, 910 F.3d at 1267 (citing 33 U.S.C. § 905(a)). "In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries." *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 931 (1984). In *Cruz*, the Ninth Circuit concluded that where a "borrowed employee" from a temporary service provider receives LHWCA benefits, the LHWCA's exclusive remedy provision applies to bar suit for "further remedy for the same injury against [the employee's] borrowing employer." 910 F.3d at 1269; *see also Fitzpatrick v. U.S. Dep't of Lab. Off. of Workers Comp. Programs*, No. 21-cv-01561-LL-JLB, 2022 WL 1556319, at *15-17 (S.D. Cal. May 17, 2022) (denying the plaintiff leave to amend the complaint to add his former employer or

---

[6] Plaintiffs do not argue that Greenbrier intentionally caused them injury or that their injuries were caused by a third party or "by the negligence of a vessel[.]" *See* 33 U.S.C. § 933; *id.* § 905(b); *Sample v. Johnson*, 771 F.2d 1335, 1346 (9th Cir. 1985).

the employer's workers' compensation carrier as defendants and concluding that the LHWCA's exclusive remedy provision barred the plaintiff's allegation that the employer's workers' compensation carrier negligently denied his benefits).

The parties agree that the LHWCA covers Plaintiffs' workers' compensation claims. (*See* Def.'s Mot. at 20-23; Buchanan Decl. Ex. 1 at 1-3; Buchanan Decl. Ex. 2 at 1.) As in *Cruz*, Greenbrier "borrowed" Plaintiffs from Fugue because Plaintiffs' "work was subject to [Greenbrier's] direction and control at all relevant times." *Cruz*, 910 F.3d at 1268. The LHWCA's exclusive remedy provision bars Plaintiffs' negligence claim against their borrowing employer. *See id.* at 1269. Although Holmes' workers' compensation claim was denied and Brown's claim has not yet been adjudicated, the Court concludes that the LHWCA's exclusive remedy provision bars any negligence claim based on work-related injuries in the scope of Plaintiffs' employment for Greenbrier. *See Fitzpatrick*, 2022 WL 1556319, at *15-17 (concluding that the LHWCA's exclusive remedy provision would bar the plaintiff's negligence claim against his former employer where the plaintiff had applied for workers' compensation benefits and benefits were denied). Accordingly, the exclusive remedy provision bars Plaintiffs' negligence claim for work-related injuries, and the Court grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' negligence claim.

## II.    TITLE VII

Plaintiffs allege that Greenbrier discriminated and retaliated against them in violation of Title VII.[7] (FAC at 4.)

///

---

[7] Greenbrier suggests that, in his deposition, Brown abandoned any retaliation and discrimination claims. (*See* Def.'s Mot. at 22, citing Brown Depo. 125:21-129:11, 130:18-133:25.) Regardless of whether Brown has abandoned those claims, Brown's claims fail on the merits as discussed below.

A. **Discrimination**

1. **Applicable Law**

Under Title VII, it is unlawful for a covered employer to discriminate against any individual based on race. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]").

"When responding to a summary judgment motion in a discrimination suit under . . . Title VII, the plaintiff may proceed by either using the *McDonnell Douglas* framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973), or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's contested conduct." *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) (simplified). Under the burden-shifting analysis of *McDonnell Douglas*, "[t]he employee must first establish a prima facie case of discrimination." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

In this context, a prima facie case of discrimination requires a plaintiff to demonstrate that (1) the employee is a member of a protected class; (2) the employee was performing according to the employer's legitimate expectations; (3) the employee experienced an adverse employment action; and (4) similarly situated individuals outside the employee's protected class were treated more favorably. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998), *as amended* (Aug. 11, 1998). "Not every employment decision amounts to an adverse employment action." *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996). An adverse employment action is "a significant change in employment status, such as

PAGE 12 – OPINION AND ORDER

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Davis*, 520 F.3d at 1089 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

If the employee establishes a prima facie case, "the employer must articulate a legitimate, nondiscriminatory reason for the challenged action." *Id.* "Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (simplified). "While intent is not relevant to a disparate impact theory of recovery, the disparate treatment theory does require proof of discriminatory intent." *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021) (citing *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993)).

      2.      Analysis

Plaintiffs allege that Greenbrier discriminated against them because of their race by not issuing them a respirator and by ordering Black employees to work inside the vessel while white employees worked outside the vessel. (*See* FAC at 4; Second Holmes Depo. 15:10-17:3; Brown Depo. 114:6-115:4.)

Plaintiffs have not pointed to any direct evidence of discriminatory motive. (*See, e.g.*, Brown Depo. 114:16-21, explaining that no one made racist comments toward Plaintiffs.) Accordingly, Plaintiffs must proceed under the *McDonnell Douglas* burden-shifting framework.

Regarding Plaintiffs' allegation that Greenbrier discriminated against them by withholding a respirator, even if Plaintiffs could establish that they experienced an adverse

PAGE 13 – OPINION AND ORDER

employment action by not timely receiving a respirator, they have not established that similarly situated individuals outside of their protected class were treated more favorably. For example, there is no evidence that white employees were approved to use a respirator more quickly. Instead, the only evidence in the record of other employees using a respirator is that Plaintiffs' foreperson, who was also Black, had a respirator. (*See* First Holmes Depo. 79:4-16, 140:3-6.) To the extent that Plaintiffs argue that the white employees did not need a respirator because they worked on the outside of the vessels, the Court addresses that theory below. Accordingly, Plaintiffs have not satisfied their burden of establishing a prima facie case, and the Court grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' respirator theory of discrimination. *See Brooks-Joseph v. City of Seattle*, No. 22-cv-1078-RSL, 2023 WL 6481567, at *8 (W.D. Wash. Oct. 5, 2023) (granting the defendants' motion for summary judgment where the plaintiff had not established a prima facie case because the plaintiff "failed to demonstrate that [another employee] was 'similarly situated'" (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006))); *Kaiser v. Trace, Inc.*, 72 F. Supp. 3d 1126, 1134 (D. Idaho 2014) (granting the defendant's motion for summary judgment where the plaintiff had "not proffered any evidence, direct or circumstantial, to show that [the defendant] treated similarly situated employees more favorably").

Plaintiffs also allege that Greenbrier discriminated against them by ordering Black employees to work inside the vessel while white employees worked outside the vessel on March 23, 2022. (*See* FAC at 4; Second Holmes Depo. 15:10-17:3; Brown Depo. 114:6-115:4.) Greenbrier argues that an "undesirable work assignment" alone is not an adverse employment action. (*See* Def.'s Mot. at 26.) Plaintiffs have not pointed to evidence in the record suggesting that Black employees regularly worked on the inside of the vessel while white employees did

not. The Court concludes that Plaintiffs' one-time assignment to a less desirable work assignment, without more, does not qualify as an adverse employment action.[8] *See Scott v. City of Phoenix*, No. 09-cv-0875-PHX-JAT, 2011 WL 3159166, at *5 (D. Ariz. July 26, 2011) ("[The plaintiff]'s assignment to the undesirable work space on the south side of the Auditor Department does not rise to the level of an adverse employment action for purposes of establishing a *prima facie* case of racial discrimination."); *Harris v. City of Fresno*, 625 F. Supp. 2d 983, 1005-06 (E.D. Cal. 2009) ("It is difficult to see how [the supervisor]'s transitory denial of safety boots 'materially' affected any of the terms, conditions, or privileges of Plaintiff's employment."); *Green v. Maricopa Cnty. Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1121 (D. Ariz. 2003) ("Plaintiff's allegations do not approach the level of severe disruptions in employment conditions found to constitute an adverse action[.]" (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000))). Thus, Plaintiffs have not satisfied their burden of establishing a prima facie case, and the Court grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' March 23, 2022, work assignment theory of discrimination.

B.   **Retaliation**

1.   **Applicable Law**

To establish a Title VII retaliation claim, a plaintiff must prove that "1) [the plaintiff] engaged in a protected activity; 2) [the plaintiff] suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment

---

[8] Plaintiffs seem to suggest that, if the job assignment was not based on race but on their younger age or the fact that they were from a temporary employment services agency, it nonetheless constituted unlawful discrimination. (*See* Brown Depo. 114:6-22, 127:2-8.) Neither age nor employment with a temporary employment services agency are protected classes under Title VII. *See* 42 U.S.C. § 2000e-2(a). In any event, Plaintiffs have not established that they suffered an adverse employment action.

decision[.]" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (citation omitted). "Protected activity includes the filing of a charge or a complaint, . . . as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)), *as amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

Title VII's anti-retaliation provision "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." *Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967, 976 (2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The test was meant to capture those (and only those) employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *White*, 548 U.S. at 68); *see also Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000) (holding that "an adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity").

"If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Ray*, 217 F.3d at 1240 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994)). "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.* (citing *Steiner*, 25 F.3d at 1464-65).

### 2. Analysis

Plaintiffs allege that Greenbrier retaliated against them by not helping them with their workers' compensation claim and by disputing allegations that they made in the context of an

Equal Employment Opportunity Commission ("EEOC") mediation. (*See* FAC at 4; Second Holmes Depo. 17:21-19:23, 21:6-18.)

Greenbrier argues that it accurately directed Plaintiffs to Fugue to resolve their workers' compensation claim. (Def.'s Mot. at 27-28; *see also* Second Holmes Depo. 19:22-23, explaining that the retaliation claim is based on the fact that "they didn't really offer me any help.") The Court concludes that Greenbrier's lack of additional assistance to Plaintiffs in pursuing their workers' compensation claim would not dissuade a reasonable worker from making or supporting a charge of discrimination. *See Ray*, 217 F.3d at 1243 (explaining that the test for an adverse employment action "does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity"); *Goins v. Cnty. of Merced*, 185 F. Supp. 3d 1224, 1239 (E.D. Cal. 2016) (granting the defendant's motion for summary judgment where the plaintiff had "failed to present evidence of any factual circumstances suggesting [the defendant]'s statements would have had anything more than a trivial effect on a reasonable person in [the plaintiff]'s shoes").

Similarly, the denial of some of Plaintiffs' allegations in the context of a mediation would not dissuade a reasonable worker from making or supporting a charge of discrimination, and, regardless, cannot form the basis of Plaintiffs' claim because "a statement made during compromise negotiations about the claim" is inadmissible evidence. FED. R. EVID. 408(a); *see also Thomas v. Toro*, No. 21-cv-00010 JAO-KJM, 2023 WL 2671425, at *8 (D. Haw. Jan. 24, 2023) (granting the defendant's motion for summary judgment where the plaintiff did "not dispute that such statements may not form the basis of any claim because they were made in the context of settlement negotiations, or because such settlement discussions do not amount to an adverse employment action . . . as a matter of law" (citing FED. R. EVID. 408)).

PAGE 17 – OPINION AND ORDER

Plaintiffs have not satisfied their burden of establishing a prima facie case, and the Court grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' retaliation claim.

## III. DEFAMATION

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016) (citing *Wallulis v. Dymowski*, 918 P.2d 755, 758 (Or. 1996)). "A defamatory statement is one that would subject the plaintiff to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held or to excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Id.* (simplified). "In the professional context, a statement is defamatory if it falsely 'ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession.'" *Id.* (quoting *Brown v. Gatti*, 145 P.3d 130, 133 (Or. 2006)).

Plaintiffs allege that Greenbrier defamed them because Greenbrier asserted the affirmative defense of "unclean hands" in its answer and because, at the EEOC mediation, Greenbrier denied or disputed some of Plaintiffs' allegations. (*See* FAC at 4; Second Holmes Depo. 21:19-24:17.) The Court concludes that neither Greenbrier's affirmative defense nor its denial of some of Plaintiffs' allegations constitute defamatory statements because they do not subject Plaintiffs to hatred, contempt, or ridicule, or tend to diminish the esteem, respect, goodwill, or confidence in which Plaintiffs are held or excite adverse, derogatory, or unpleasant feelings or opinions against them. *See Card v. Pipes*, 398 F. Supp. 2d 1126, 1135 (D. Or. 2004) (concluding that the defendants' statement that the plaintiff's proof was "irrelevant" was a non-actional opinion or "[e]ven if the statement is viewed as a factual assertion, the court finds that it lacks defamatory meaning"). In addition, "statements made as part of judicial and quasi-judicial

PAGE 18 – OPINION AND ORDER

proceedings are absolutely privileged." *Tubra v. Cooke*, 225 P.3d 862, 867 (Or. Ct. App. 2010) (citing *Binder v. Or. Bank*, 585 P.2d 655, 655 (Or. 1978)).

The Court therefore grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' defamation claim.

### IV.   OSHA CLAIM

Plaintiffs also allege that Greenbrier violated OSHA. (FAC at 3.) However, "OSHA does not provide a private right of action." *Clark v. Wells Fargo Bank*, 669 F. App'x 362, 363 (9th Cir. 2016) (citing 29 U.S.C. § 653(b)(4)). "Instead, 'OSHA creates an intra-agency mechanism by which an alleged violation can be raised by a private actor[.]'" *Okai v. Kaiser Permanente CSC*, No. 22-cv-112 TWR (BGS), 2023 WL 2145530, at *6 (S.D. Cal. Feb. 21, 2023) (quoting *Glanton v. Harrah's Ent., Inc.*, 297 F. App'x 685, 687 (9th Cir. 2008)).

Accordingly, the Court grants Greenbrier's motion and denies Plaintiffs' motion for summary judgment on Plaintiffs' OSHA claim. *See Buchannan v. Aces High Mgmt., LLC*, No. 2:23-cv-01061-RFB-DJA, 2024 WL 307613, at *3 (D. Nev. Jan. 25, 2024) (dismissing claims for OSHA violations "because OSHA does not provide a private right of action"); *Horton v. Narbaitz*, No. 22-cv-03174-WHO, 2023 WL 2563078, at *16 (N.D. Cal. Mar. 16, 2023) (same).

///
///
///
///
///
///
///
///
///

## CONCLUSION

For the reasons stated, the Court GRANTS Greenbrier's motion for summary judgment (ECF No. 52), DENIES Plaintiffs' motion for leave (ECF No. 61), DENIES Plaintiffs' motion for summary judgment (ECF No. 62), and DENIES Plaintiffs' corrected motion for leave (ECF No. 65).

**IT IS SO ORDERED.**

DATED this 7th day of June, 2024.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge